FILED

March 24, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:47 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| Alan Cotton, Deceased,<br>　　　　Employee, | Docket No.: 2015-02-0061 |
| v. | State File No.: 22812-2015 |
| HUMACare, Inc.,<br>　　　　Employer, | Judge Brian K. Addington |
| And | |
| Zurich Insurance Company,<br>　　　　Carrier. | |

---

## COMPENSATION HEARING ORDER

---

This matter came before the undersigned Workers' Compensation Judge on March 8, 2016, for a Compensation Hearing, pursuant to Tennessee Code Annotated section 50-6-239 (2015). This is an action for death benefits brought by Mr. Cotton's surviving spouse. Upon agreement of the parties and as set forth in the Amended Initial Hearing (Scheduling) Order, the Court bifurcated this cause and agreed to adjudicate the issue of whether HUMACare, Inc.[1] employed Mr. Cotton, and is therefore obligated to provide workers' compensation death benefits. The Court reserved the remaining issues.

The central legal issue is whether HUMACare was an employer of Mr. Cotton that is required to provide workers' compensation death benefits to his surviving spouse.[2] For the reasons set forth below, this Court finds that Mrs. Cotton established by a preponderance of the evidence that HUMACare was Mr. Cotton's employer, but she failed to prove HUMACare was obligated to provide benefits for the work-related death. Accordingly, the Court finds that Mrs. Cotton is not entitled to death benefits from HUMACare or its insurance carrier, Zurich.

---

[1] A sister case to the present matter involved Mr. Cotton's widow and Central USA Wireless. Prior to the Compensation Hearing, Central USA and its workers' compensation carrier, Liberty Mutual, entered into a settlement agreement with Mr. Cotton's widow and settled all matters between them.

[2] A complete listing of the technical record, stipulations, and exhibits admitted at the Compensation Hearing is attached to this Order as an appendix.

**History of Claim**

William Southerland, the CEO of HUMACare, testified that his company, based in Loveland, Ohio, is a professional employer organization (PEO).[3] Central USA is a company based in Cincinnati, Ohio, that performs work upgrading cell phone towers. (Ex. 9 at 19.)

Prior to any agreement between Central USA and HUMACare, HUMACare obtained workers' compensation insurance through Zurich for clerical workers in the State of Tennessee for the period January 1, 2014, through January 1, 2015. (Ex. 3 at 1.) Mr. Southerland testified the Tennessee coverage was for a client[4] operating in Tennessee and not for HUMACare employees. Zurich insured HUMACare for work injuries sustained by employees classified by code 8810, which refers to clerical office employees. *Id.* at 5.

On May 8, 2014, Central USA applied to Liberty Mutual for workers' compensation insurance for its cell phone tower workers. (Ex. 6.) It listed in the Nature of Business/Description of Operations section of the application, "Insureds PEO was suppose [sic] to have coverage and didn't." *Id.* at 3. The employee classification code for the workers insured under this policy was 7600. *Id.* Central USA asserted in the contract application that it employed eight full-time employees. *Id.*

On May 12, 2014, Central USA and HUMACare entered a Client Agreement for one year in which HUMACare agreed to provide human capital management and employee benefit services to Central USA. (Ex. 1 at 1.)

The section of the Client Agreement labeled "Services Provided by and Obligations of HUMACare," subsection (C)(3) states, "Consistent with applicable law, maintenance of workers compensation insurance coverage during the Term for Employees, for which upon request HUMACare shall provide Client a certificate of insurance containing an alternative employer endorsement, and management of workers compensation claims." *Id.* at 2.

Subsection (D) of the same section states, "The Parties agree that HUMACare shares the responsibility and liabilities of being an employer such that they co-employ Employees for workers' compensation purposes under OAC (Ohio Administrative Code) 4123-17-15." *Id.* at 3.

Subsection (E) of the same section states, "The Parties further agree that HUMACare does not exercise direction and control over Employees under OAC 414-3-

---

[3] Mr. Southerland testified that he did not know whether HUMACare registered in Tennessee as a PEO. The parties submitted no evidence on that subject.

[4] Mr. Southerland could not remember the name of the client, but it was not Central USA.

2

05." *Id.* at 3. It further states in subsection (E)(10), "HUMACare has no right to discharge Employees." *Id.*

Subsection (A) of the section titled "Workers Compensation and Safety Practices" reads, "HUMACare shall maintain workers compensation coverage for Employees during the Term of this Agreement, in accordance with applicable law." *Id.* at 7.

Subsection (B)(5) of the same section dealing with Central USA's responsibilities includes, "Notify HUMACare before assigning any Employee to work outside the state of Ohio." *Id.* at 8.

According to Exhibit A of the Client Agreement, Central USA was to pay certain fees to HUMACare. *Id.* at 15. Concerning service fees, section II of Exhibit A to the Client Agreement states as follows:

> Client agrees to pay the following amounts, in addition to the above, for professional employment services. These fees cover the services provided by HUMACare; which include, but are not limited to, worker's compensation insurance, risk management services, payroll processing, Human Resource and personnel services. These amounts are applied to the employee's gross wages for the following categories of employees:

| State | Class Code | Lease Factor |
|---|---|---|
| OH | 8810 | .002000 |

> ** This rate is based upon the best knowledge and information that prior claims for Central USA Wireless have been disclosed. Rates are subject to change if an unknown claim arises those [sic] impacts the HUMACare Workers' Comp Pool. HUMACare has the right to adjust lease factor rates based on readjustments made by the Ohio Bureau of Workers' Compensation.

> Humacare [sic] will also investigate the best options for your non-Ohio employees in regards to Workers' Compensation coverage. *Id.*

On June 6, 2014, Liberty Mutual issued a workers' compensation insurance policy to Central USA in care of HUMACare. The policy covered Central USA employees classified under insurance code number 7600, namely telecommunications, cable TV, or satellite employees. (Ex. 4.) The policy period ran from May 12, 2014, to May 12, 2015. *Id.* at 3. HUMACare billed the premium for this insurance to Central USA. (Ex. 6 at 1.) HUMACare also provided workers' compensation coverage for Central USA's office staff in Ohio and billed it for the premium. *Id.*

3

Central USA hired Mr. Cotton as a cell phone tower maintenance technician. Mr. Cotton filled out an employment agreement with HUMACare on December 17, 2014. (Ex. 10.) On December 18, 2014, after he climbed a portion of a cell tower for Central USA, in Greene County, Tennessee, Mr. Cotton fell to his death. The parties stipulated Mrs. Cotton is the sole appropriate party to file for death benefits in this matter.

## Parties' Assertions During the Compensation Hearing

At the Compensation Hearing, Mrs. Cotton asserted the Client Agreement was unambiguous regarding HUMACare's status as a co-employer of Mr. Cotton, and HUMACare employed Mr. Cotton for purposes of workers' compensation. As such, Mrs. Cotton contends HUMACare is liable for surviving spouse benefits under the Workers' Compensation Law.

HUMACare countered that the Client Agreement was ambiguous with regard to its employer status concerning Mr. Cotton. It asserted that through parol evidence it successfully established that Central USA alone was the employer for workers' compensation purposes in this case. HUMACare asserted in its brief that the Court did not have jurisdiction to determine the parties' responsibilities under the Client Agreement.[5]

## Findings of Fact and Conclusions of Law

The employee in a workers' compensation claim has the burden of proof on all essential elements of the claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff,* No. 2014-05-0005, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Tenn. Workers' Comp. App. Bd. Nov. 9, 2015). *See also* Tenn. Code Ann. § 50-6-239(c)(6) (2015) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

*Whether Humacare was Mr. Cotton's Employer*

HUMACare contracted with Central USA to become a co-employer of Central USA's employees.[6] The contract is clear that it was the intention of the parties to share employer responsibilities.

---

[5] Whether the Court has jurisdiction to determine responsibilities under the Client Agreement or not, the Court has jurisdiction to determine who is or who is not an employer as well as an employer's or co-employer's responsibility to provide workers' compensation benefits pursuant to the Workers' Compensation Law.

[6] Mrs. Cotton filed a Motion in Limine to exclude parol evidence concerning the Client Agreement. The Court took

Tennessee Code Annotated section 50-6-102(13) (2015) defines "Employer" as "any individual, firm, association or corporation . . . using the services of not less than five (5) persons for pay[.]" The evidence establishes Central USA, and therefore HUMACare, had more than five employees, as Central USA's insurance contract lists eight employees. Therefore, HUMACare meets the definition of "Employer" pursuant to the Workers' Compensation Law.

Furthermore, HUMACare acknowledged during the Compensation Hearing that it was an employer of Mr. Cotton, but asserted that the Client Agreement required Central USA to obtain workers' compensation insurance for its cell tower maintenance employees, while HUMACare covered Central USA's Ohio office staff. The evidence bears this out in that Liberty Mutual issued a workers' compensation policy for Central USA's cell tower workers in Tennessee in care of HUMACare. HUMACare, in turn, billed Central USA for Liberty Mutual's premium and the premium it paid for Central USA's office workers in Ohio.

*HUMACare's apportionment of liability*

Having found HUMACare was Mr. Cotton's co-employer, the Court turns to HUMACare's liability in this claim as a co-employer.

Concerning the liability of co-employers, the pertinent statute reads as follows:

Contribution to payment of compensation by two or more employers-Agreement between employers.
(a) In case any employee for whose injury or death compensation is payable under this chapter, shall at the time of injury, be employed and paid jointly by two (2) or more employers subject to this chapter, the employers shall contribute to the payment of the compensation in proportion of their several wage liability to the employee.

Tenn. Code Ann. § 50-6-211(a) (2015).

HUMACare is incorrect when it asserted it had no liability for workers' compensation because of its contract with Central USA. An employer cannot contract away its obligations to provide benefits under the Workers' Compensation Law. However, the Worker's Compensation Law assigns co-employers' liability in proportion of their wage liability.

---

the issue under advisement and informed the parties that it would inform the parties in the Order of its decision. The Court determines the Client Agreement is clear, and parol evidence concerning negotiations and stipulations made prior to or contemporaneous with the agreement are barred. *See Marron v. Scarbrough*, 314 S.W.2d 165, 181 (Tenn. Ct. App. 1958).

The Client Agreement is clear that HUMACare, along with Central USA, was a co-employer of Mr. Cotton with certain payroll obligations to him. However, as a cell phone tower technician, Mr. Cotton performed services only for Central Wireless, who alone controlled Mr. Cotton's work, the jobsites he worked, and the wages he received. HUMACare had no input on Mr. Cotton's work. Mrs. Cotton failed to present any evidence of work that Mr. Cotton performed for HUMACare.

Central USA paid Mr. Cotton's wages to HUMACare, which simply prepared Mr. Cotton's paycheck and sent it to him. HUMACare bore no wage liability to Mr. Cotton. It simply passed Mr. Cotton's wages from Central USA to him as part of its services pursuant to the Client Agreement.

Therefore, although HUMACare co-employed Mr. Cotton, the Court finds HUMACare's proportion of wage liability was zero. Consequently, HUMACare has no liability in this matter, in accordance with Tennessee Code Annotated section 50-6-211(a) (2015).

**IT IS, THEREFORE, ORDERED** as follows:

1. Mrs. Cotton's claim for widow benefits against HUMACare is denied. The case is dismissed with prejudice.

**ENTERED this the 24th day of March, 2016.**

_____
**HON. BRIAN K. ADDINGTON**
**Workers' Compensation Judge**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty calendar days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

6

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the party who filed the notice of appeal shall have fifteen calendar days after the issuance of the docketing notice to submit a brief to the Appeals Board for consideration. Any opposing party shall have fifteen calendar days after the filing of the appellant's brief to file a brief in response. No reply briefs shall be filed. Briefs shall comply with the Practice and Procedure Guidelines of the Workers' Compensation Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03(6) (2015).

# APPENDIX

Technical record:
- Petition for Benefit Determination, filed March 26, 2015;
- Dispute Certification Notice, filed April 23, 2015;
- Request for Expedited Hearing, filed April 21, 2015;
- Initial and Amended Hearing Orders;
- Emergency Motion to Continue;
- Joint Motion to Continue;
- Order Resetting Compensation Hearing;
- Motion in Limine;
- Employee's Trial Brief;
- Employer's Pre-Hearing Statement; and,
- Employer's Trial Brief.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulated Findings of Facts of the Parties:
- Mr. Cotton's date of injury/death was December 18, 2014.
- Mr. Cotton was at work at the time of his death.
- Mrs. Cotton is the appropriate party to file the case.

Exhibits:
1.   Client Agreement between Central USA and HUMACare;
2.   W-2 for Mr. Cotton;
3.   HUMACare's Zurich Workers' Compensation Policy;
4.   Central USA's Liberty Mutual Workers' Compensation Policy;
5.   Central USA's Certificate of Liability Insurance;
6.   Workers' Compensation Application;
7.   Invoice to Central USA from HUMACare;
8.   *Bennett v. Mid-South Terminals Corporation* (Mistakenly, jointly admitted as an exhibit);
9.   Central USA 2015 Client Elections form; and
10.  HUMACare Employment packet.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 24th day of March, 2016.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Jonathan West, Esq., Employee's Attorney | | | X | jon@westlawpllc.com |
| Byron Lindberg, Esq. Employer's Attorney | | | X | blindberg@hbss.net |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

9